UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————————

LISA M. GARRETT,

       Plaintiff,

                                Case No.

v

                                HON.

CONSUMERS ENERGY
COMPANY, a Michigan domestic
profit corporation,

       Defendant.

_____

James C. Baker (P62668)
STERLING ATTORNEYS AT LAW, P.C.
Attorney for Plaintiff
33 Bloomfield Hills Parkway, Suite 250
Bloomfield Hills, MI 48304
(248) 644-1500
jbaker@sterlingattorneys.com

_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff LISA M. GARRETT by James C. Baker (P62668) of Sterling Attorneys at Law, P.C., and for her Complaint and Demand for Jury Trial against Defendant Consumers Energy Company, alleges:

**JURISDICTIONAL ALLEGATIONS**

1. This is an action for disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 USC §12111 et seq.

("ADA"), and Michigan's Persons with Disabilities Civil Rights Act, MCL 37.1101 et seq. ("MPWDCRA"), arising out of Plaintiff's employment relationship with Defendant.

2.      Plaintiff Lisa M. Garrett (hereinafter Plaintiff, Garrett, or Plaintiff Garrett) is a resident of Oakland County Michigan, which is within this District.

3.      Defendant Consumers Energy Company is a Michigan domestic profit corporation, incorporated under the laws of the State of Michigan, with its primary headquarters located in Jackson, Michigan, yet doing business throughout the State of Michigan, including substantial business done within this District.

4.      The amount in controversy exceeds seventy-five thousand dollars, exclusive of interest, costs, and statutory fees.

5.      Plaintiff timely files her claims within 90 days of receipt of her MDCR and EEOC-issued Notice of Right to Sue, which was mailed to her on July 15, 2025.

6.      This Court has subject matter jurisdiction pursuant to 28 USC §1331 (federal question), 28 USC §1348 (civil rights), and 28 USC §1367 (supplemental jurisdiction).

7.      Venue is proper in this district under 28 USC 1391(a)(2), (b)(1), and (b)(2) because all or substantial parts of the events giving rise to the claim

occurred in this District, Plaintiff resides in this District, and Defendant does substantial business in this District.

8. Plaintiff was an employee of Defendant as defined by the ADA and MPWDCRA.

9. Defendant is an employer as defined by the ADA and MPWDCRA.

10. Plaintiff was discriminated and retaliated against because of her disability, and because of how Defendant perceived and/or regarded her disability.

11. Defendant acted based on Plaintiff's disability and/or how it perceived and/or regarding her disability to the detriment of Plaintiff's employment.

## GENERAL ALLEGATIONS

12. Plaintiff became employed with Defendant on June 26, 2000.

13. Her most recent position held was Compliance Investigator.

14. Plaintiff has suffered adverse employment actions at the hands of Defendant and its agents, those actions including being subjected to other terms and conditions of employment different than those required of employees who are not disabled and/or who are not perceived or regarded as disabled.

15. Other adverse employment actions include being denied reasonable accommodations due to a disability and being exposed to a hostile work

environment based on disability; Plaintiff was treated severely and pervasively hostile and different than other employees who are not disabled and/or who are not perceived as disabled.

16.    Plaintiff was constructively discharged from employment due to a disability, and/or how Defendant perceived and/or regarded Plaintiff's disability.

17.    Plaintiff has suffered other adverse employment actions at the hands of Defendant and its agents.

18.    The adverse employment actions taken against her have resulted in a loss of career, significant economic impacts including the loss of income and benefits, and other damages including emotional distress, anxiety, and lost opportunities.

*Disability History*

19.    On December 28, 2015, Plaintiff underwent surgery due to four (4) rear-end car accidents in a three-year span.

20.    Three of the four occurred when Plaintiff was traveling outside of her home and office work locations to participate in meetings or to conduct employee relations activities.

21.    On July 19, 2017, Plaintiff suffered a fall at home on the stairs, resulting in a compression fracture to her spine.

22.     On February 9, 2018, Plaintiff underwent thoracic spine herniation surgery.

23.     Thereafter, on August 5, 2020, Plaintiff underwent lumbar disc herniation surgery.

24.     On February 4, 2021, Plaintiff was diagnosed with progressive spondylolisthesis, and a resultant stress fracture defect from the August 5, 2020 surgery.

25.     On April 9, 2021, Plaintiff underwent a lumbar revision and fusion at the L4-5 to repair the stress fracture.

*Plaintiff's Job Performance Before and During the Procedures*

26.     At all relevant times, including during the times of her injuries, when the medical procedures were performed, and healing thereafter, Plaintiff satisfactorily performed her duties for Consumers Energy, including receiving at least Satisfactory performance evaluations, if not evaluations where her performance was deemed to exceed expectations.

27.     During and since her injuries and procedures, up to her 2023 review, Plaintiff received at least Satisfactory performance reviews, if not reviews where her performance was deemed to exceed Defendant's expectations.

28.     On March 17, 2024, Plaintiff learned for the first time that her supervisor had deemed her 2023 job performance "Needs Improvement."

### *Medical Leave and Work Performance History*

29.   From 2015 through May 2023, Plaintiff worked remotely; not having to report daily to any specific work location other than when meetings or investigations required.

30.   In early 2020, absent essential workers, Defendant went entirely to remote work due to the COVID pandemic.

31.   On May 15, 2023, Defendant ordered its employees, including Plaintiff, to return to work in person.

32.   Consumers Energy mandated Plaintiff to work at its corporate headquarters in Jackson, Michigan three days per week (Monday, Tuesday, and Thursday).

33.   With the exception of meetings and other unique employment circumstances, Plaintiff's job did not historically require her to work in-person at the Jackson headquarters.

34.   The mandatory order to work in person meant 12 hours of highway travel weekly, resulting in Plaintiff being required to work 60-hour work weeks.

35.   Given her medical issues, and knowing she could perform her job at least satisfactorily, Plaintiff filed a request for reasonable accommodations under the ADA on June 28, 2023.

36.   The basis for her accommodations request included the travel to and from work, sitting/standing at her desk at work exacerbated her back pain, all of which affected her overall wellbeing, including impacting her ability to sleep.

37.   The sleep impact was significant given the number of hours Plaintiff was required to drive, making her a risk to herself and others.

38.   Consumers Energy failed to engage in any interactive process, failed to recognize Plaintiff's request, and further failed to accommodate remote work from June 29, 2023 until August 2, 2023, when Plaintiff called in sick after throwing out her back at home.

39.   Nearly two months after she requested her accommodation, Plaintiff was placed on paid sick leave in August 2023.

40.   On October 11, 2023, Plaintiff underwent a lumbar revision/fusion at the L3-S1 to address pseudoarthrosis found resulting from the April 9, 2021 surgery.

41.   Plaintiff's treaters disabled her from working from August 2, 2023 to January 31, 2024 for surgery and recovery.

42.   Defendant, by its agents, repeatedly harassed Plaintiff for medical documents from her treaters, despite Plaintiff authorizing Defendant to communicate with her treaters directly on the topic of her medical leave and surgical needs.

43. On November 6, 2023 Plaintiff complained about the harassment she received relative to her sick leave.

44. Despite reasonable medical evidence of her inability to work through January 31, 2024, on November 28, 2023 Defendant ceased providing Plaintiff with paid sick leave, instead informing Plaintiff it could "accommodate" the work restrictions her treater opined were necessary.

45. However, Defendant by its agents failed or refused to obtain a return-to-work authorization from Plaintiff's treater and further failed to acknowledge that Plaintiff's treaters deemed her completely disabled from work until January 31, 2024.

46. Plaintiff submitted requests for sick leave, yet knowing it would be unpaid, Plaintiff was forced to return to work for one week.

47. Between December 4 to December 7, 2023 Plaintiff worked partial days due to her pain and medication, she took a vacation day on December 8, and thereafter returned to sick leave on December 11, 2023.

### *Effect of the Return to Work, and the Effects Thereafter.*

48. The circumstances of returning to work for a week allowed Defendant to say Plaintiff broke her sick leave accommodation of "no work."

49.    Rather, Defendant opportunistically created a situation that left Plaintiff no choice but to return, with Defendant knowing her actions would create the opportunity for Defendant to take action adverse to her employment.

50.    Thereafter, Plaintiff's director invited Plaintiff to a "year-end" meeting the same day Plaintiff had a doctor's appointment.

51.    Plaintiff intended to go from her doctor's appointment to the meeting with her director.

52.    From the time she left her home, to the doctor's office, and thereafter that day, Plaintiff was aware she was under surveillance by Defendant's corporate security personnel; coworkers she knew and had worked with personally at Consumers Energy.

53.    She met the director, who was accompanied by a corporate leader.

54.    During the meeting, Plaintiff was subjected to questions about physical therapy, what was she doing about her disability, she was told how "returning to work will help get better," and was seemingly threatened when the leader abruptly told her "I know where you live."

55.    This interrogation was hostile to her and related to her disability.

56.    The following day, Plaintiff was surveilled again, such that she contacted the Waterford police as somebody was watching her down her street.

### *The End of Her Employment?*

57.     On February 15, 2024, Plaintiff's company cell phone was abruptly cancelled and placed in "lost" mode, and access to her company computer was shut off.

58.     Plaintiff was cut off from access to Consumers Energy.

59.     On February 29, 2024, Plaintiff filed a Complaint of disability discrimination and retaliation with the Michigan Department of Civil Rights (MDCR).

60.     On March 17, 2024, Plaintiff inquired of Defendant about her 2023 bonus and merit increase; she was advised she was ineligible because her performance rating deemed her "needing improvement."

61.     This was the first time in her career with Consumers Energy that she received anything less than "Satisfactory."

62.     Plaintiff was never told her job performance was unsatisfactory; rather, she had always received "Satisfactory" or "Exceeds" performance ratings during her career with Defendant.

63.     The performance rating given to Plaintiff was in retaliation for her requesting reasonable accommodations, among other things.

64.     Consumers Energy's actions violated its short-term disability policies and Plaintiff's eligibility for long-term disability.

65. Because she was forced to return to work for a week, she was deemed by Defendant to have refused her doctor's recommendations, and she was denied long-term disability benefits.

66. A bone scan on September 23, 2024 detected possible incomplete healing and possible pseudoarthrosis from the October 11, 2023 procedure, which has resulted in a failed fusion at the L3-S1.

67. Despite being cut off from her work access, Defendant never informed Plaintiff she was terminated.

68. She was eligible for disability retirement on May 1, 2025, or otherwise could have retired early on May 1, 2027; both of these options adversely impact Plaintiff's pension and other benefits.

69. Plaintiff has been constructively discharged from her employment with Consumers Energy, which is an adverse employment action, and has caused her financial harm.

70. The other impacts of Defendant's conduct have adversely impacted Plaintiff's mental, physical, and emotional health.

## COUNT I

*Disability Harassment, Discrimination, and Retaliation in Violation of the ADA*

71. Plaintiff incorporates the preceding paragraphs by reference.

72. Plaintiff is person with a disability as defined in the Americans with Disabilities Act, 42 USC 12101 *et seq*.

73. At all relevant times, Plaintiff was an employee and Defendant was her employer as defined by the ADA.

74. Plaintiff was qualified for her position.

75. Defendant treated Plaintiff differently, harassed her, and subjected her to a hostile work environment due to Plaintiff's disability and/or how Defendant regarded or perceived her disability.

76. Defendant treated similarly situated employees who did not have disabilities and who were not regarded as disabled more favorably than Plaintiff.

77. The discriminatory and retaliatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

78. As direct and proximate result of Defendant's wrongful and discriminatory and retaliatory treatment of Plaintiff Garrett, she has suffered injuries and damages, including but not limited to, loss of past, present, and future earnings and earning capacity; loss of the value of fringe benefits; physical, mental, and emotional distress, including anxiety, anguish, humiliation, and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to continue gainful occupation of choice.

## COUNT II

### *Discrimination and Retaliation in Violation of Michigan's Persons with Disabilities Civil Rights Act*

79.     Plaintiff incorporates the preceding paragraphs by reference.

80.     At relevant times, Plaintiff Garrett was an employee and Defendant Consumers Energy was her employer covered by and within the meaning of Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*

81.     Michigan's PWDCRA, among other things, prohibits discrimination on the basis of disability and/or the perception of disability.

82.     The PWDCRA also prohibits retaliation against those who complain about discrimination on the basis of disability.

83.     Defendant discriminated against Plaintiff as set forth herein.

84.     Defendant retaliated against Plaintiff for her protected activity as set forth herein.

85.     The discriminatory and retaliatory practices at issue were intentional, in deliberate disregard of the rights and sensibilities of Plaintiff.

86.     As direct and proximate result of Defendant's wrongful and discriminatory and retaliatory treatment of Plaintiff Garrett, she has suffered injuries and damages, including but not limited to, loss of past, present, and

future earnings and earning capacity; loss of the value of fringe benefits; physical, mental, and emotional distress, including anxiety, anguish, humiliation, and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to continue gainful occupation of choice.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff Lisa M. Garrett requests judgment against Defendant Consumers Energy Company as follows:

**A.   Legal Relief**

1. Compensatory damages in whatever amount she is found to be entitled;

2. Exemplary damages in whatever amount she is found to be entitled;

3. Punitive damages in whatever amount she is found to be entitled;

4. A judgment for lost wages and benefits in whatever amount she is found to be entitled;

5. An award of interest, costs and reasonable attorney fees; and

6. Whatever other legal relief appears appropriate at the time of final judgment.

**B.   Equitable Relief:**

1. An injunction out of this Court prohibiting any further acts of wrong-doing;

2. An award of interest, costs and reasonable attorney fees; and

3.      Whatever other equitable relief appears appropriate at the time of final judgment.

## JURY DEMAND

Plaintiff Lisa M. Garrett, by her attorney James C. Baker of Sterling Attorneys at Law, P.C., respectfully requests a trial by jury.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:   /s/ James C. Baker
        James C. Baker (P62668)
        Attorney for Plaintiff
        33 Bloomfield Hills Pkwy., Ste. 250
        Bloomfield Hills, MI 48304
        (248) 644-1500
        jbaker@sterlingattorneys.com

Dated: August 29, 2025